# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:11-CV-228-MOC-DSC

| | |
|---|---|
| MARY MIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM AND RECOMMENDATION** |
| CHARLOTTE-MECKLENBURG ) | **AND ORDER** |
| SCHOOLS, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss Plaintiff's Complaint," Doc. 8, filed June 8, 2011, and the parties' associated briefs and exhibits, Docs. 10 and 11.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the *pro se* Complaint, Doc. 1, as true, as we must at this early stage in the proceeding, Plaintiff Mary Mixon, an African-American woman, has worked for Defendant Charlotte-Mecklenburg Schools ("CMS") since March 23, 1998. Plaintiff generally alleges that she was subjected to discrimination and harassment based on her race during her employment with CMS and was terminated in retaliation for complaining about this treatment. Plaintiff used the Court's pre-printed form for employment discrimination claims arising under Title

VII and left the "Cause of Action" section of her Complaint entirely blank. Id. at 4. She states that her "Injury" is "reduction in force by Superintendent Dr. Peter Gorman." Id. Additionally, she notes that prior to the reduction in force, she was harassed and complained to CMS officials, but "no relief was granted." Id. at 4 and 6.

Plaintiff attached a two page document to her Complaint which asserts that during her last year of employment with CMS she was "subjected to offensive comments from my co-workers and the assistant principal Donna Washington/black that regarded my hair and appearance." Id. at 7. Plaintiff further states that although she made numerous complaints to "Principal Jeffrey Ruppenthal/white," nothing was done. Id. Plaintiff claims that when unidentified white co-workers reported that she offended them, she was disciplined in the form of a corrective action plan dated March 29, 2010. Id. Plaintiff also states that on or around June 7, 2010, she was informed by Superintendent Gorman that her position was being eliminated due to a "serious budget shortfall." She asserts that she "was chosen for reduction because of [her] corrective action plan and in retaliation for having complained." Id. at 7-8. These allegations are substantially the same as those contained in Plaintiff's Charge filed with the Equal Employment Opportunity Commission ("EEOC") on June 14, 2010 and attached to her Complaint. Id. at 11-12.

Plaintiff also attached several undated documents to her Complaint that include the following allegations:

> Jeffrey Ruppenthal [white] addressed me that my cummultive [sic] absences are a concern starting from the time I entered Mountain Island. . . My hope is that Jeffrey Ruppenthal will at least keep in mind the facts and not continue to form his opinions based on his interpersonal skills in relation to communicating with me individually. Id. at 14.

> Jeffrey Ruppenthal wrote in my evaluation that working along harmonious with fellow teacher's assistants was a concern. Id.

2

> I have been approached by Assistant Principal Donna Washington [black] on several occasions asking me about my hair. Whether the hair I am wearing is mine? I have expressed to her that I don't appreciate being asked questions of that nature due to wanting to remain professional. Id. at 16.
>
> Mrs. Rebecca Goins [race unidentified] shared with me this statement. Ms. Mixon, I had a dream of you wearing metallic hair that appeared radiant. I was wondering why do you wear a wig? You should wear your hair more often. Id.
>
> Mrs. Grace Williamson an Instructional Assistant has made accusations about me in reference to making a verbal attack which didn't happen like she told it. . . As a result of this I was placed on an action plan. Id.
>
> Mrs. Grace Williamson [race unidentified] has made fun of my appearance calling me skinny when I struggle with my weight. It was brought to Principal Ruppenthal's attention who was supppse [sic] to speak to her about being offensive." Id. at 18.
>
> Mrs. Grace Williamson has continued to approach me directly and indirectly as she knows it annoys me since she made Facilitator Vicki Douvikas and Assistant Principal Donna Washington feel that I tramatized [sic] her earlier this year. Id. at 18.

On February 17, 2011, the EEOC issued Plaintiff a Letter of Dismissal and Notice of Rights informing her of her right to sue. Id. at 9-10. On May 10, 2011, Plaintiff commenced this action against CMS. On July 8, 2011, CMS filed this Motion to Dismiss, Doc. 8. CMS argues that pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claims of discrimination, harassment, and retaliation in violation of Title VII should be dismissed because her Complaint is devoid of any factual allegations that demonstrate a legally actionable claim under Title VII.

In her Response to Defendant's Motion to Dismiss, Doc. 10, Plaintiff offers a litany of instances of purported mistreatment by CMS employees that were not alleged in her Complaint, but fails to address CMS's arguments in favor of dismissal.

The Motion to Dismiss has been fully briefed and is now ripe for review.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

The Court is mindful of the latitude extended to the pleadings of *pro se* litigants. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (courts should "[c]onstru[e] [a *pro se*] petitioner's inartful pleading liberally"). However, courts cannot act as the *pro se* plaintiff's advocate or develop claims which the plaintiff failed to raise clearly on the face of her complaint. Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff). See also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir.1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985). As a result, even a *pro se* plaintiff's basis for relief "requires more than labels and conclusions...." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). In light of these cases, conclusory statements with insufficient factual allegations, even when asserted by *pro se* plaintiffs, will not survive a motion to dismiss under Rule 12(b)(6).

Under Federal Rule of Civil Procedure 15(a), Plaintiff must request leave of Court to amend her Complaint and cannot simply include additional factual allegations in a responsive pleading. Fed.R.Civ.P. 15(a). See, Materson v. Stokes, 166 F.R.D. 368, 370 (E.D.Va. 1996). Additional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Beck v. City of Durham, 129 F.Supp.2d 844, 855 (M.D.N.C. 2000). Therefore, the Court will not consider the new factual allegations detailed in Plaintiff's Response, Doc. 10.

**B. Discrimination Claim under Title VII**

A plaintiff seeking to state a discrimination claim under Title VII must allege: (1) that he or she is a member of a protected class; (2) that he or she was satisfactorily performing the job; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside of the protected class. White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The Fourth Circuit has held that Title VII applies solely to employment discrimination based on the specific protected categories of race, color, sex, religion, and national origin. King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976). Title VII does not cover other types of discrimination or mistreatment in the workplace, regardless of how unfair the alleged conduct may be. Id. Moreover, "[s]imply because someone falls within a protected class . . . does not in and of itself mean that the insults, affronts, and disagreements one experiences in the everyday workplace are necessarily attributable to alleged discrimination made unlawful by federal law." Miller v. Ingles, No. 1:09-cv-200, 2009 WL 4325218, at *14 (W.D.N.C. Nov. 24, 2009).

In this case, there are no factual allegations in Plaintiff's Complaint or the attached documents that support her claim of discrimination based on race. Plaintiff provides a laundry list of generalized workplace grievances about comments and incidents involving both black and white

6

employees that have nothing to do with her race. This is not the type of conduct that Title VII was intended to cover. See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (emphasizing that "complaints premised on nothing more than rude treatment by coworkers, . . . callous behavior by one's supervisor, . . . or a routine difference of opinion and personality conflict with one's supervisor" are not actionable) (internal quotes and alterations omitted).

The mere fact that Plaintiff subjectively believes she was terminated from employment due to racial bias does not make it so. See Wells v. Moen, Inc., No. 4:08-CV-00180-FL, 2009 WL 2568186, at *5 (E.D.N.C. August 17, 2009) (emphasizing that plaintiff's "bare conclusory recitation that she was terminated because of her gender and race is not entitled to be deemed true"). In the absence of any allegations that Plaintiff suffered differential treatment as the result of her race, her discrimination claim necessarily fails. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title VII workplace discrimination claim be granted.

### C. Harassment Claim under Title VII

In order to state a prima facie hostile work environment harassment claim based on race, Plaintiff must show that: (1) she was harassed "because of" her race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir. 2011).

Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006) (internal citations omitted). As the Fourth Circuit has recognized, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." Sunbelt Rentals, Inc., 521 F.3d at 315. It is insufficient to merely plead facts establishing "callous behavior by [one's] superiors." Id. at 315-16 (quoting Bass v. E.I. Dupont

de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003)); see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (the " 'mere utterance of an ... epithet which engenders offensive feelings in a employee[ ]' does not sufficiently affect the conditions of employment to implicate Title VII") (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (internal citation omitted).

The plaintiff must plead facts showing that she perceived the harassment to be hostile or abusive, and that the harassment was "sufficiently severe or pervasive" so as to "create[ ] an environment that a reasonable person would find hostile or abusive." Jennings v. Univ. of North Carolina, 482 F.3d 686, 696 (4th Cir.2007) (internal quotations omitted); see Harris, 510 U.S. at 21-22 ("if the victim does not subjectively perceive the environment to be abusive, ... there is no Title VII violation"). Thus, the plaintiff must bring forward facts showing both subjective and objective "severe or pervasive" harassment. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir.2003) (en banc) (citing Harris, 510 U.S. at 21-22). In determining whether conduct is so severe or pervasive as to be objectively intolerable, a court examines the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Fox v. Gen. Motors Corp., 247 F.3d 169, 178 (4th Cir. 2001).

The undersigned finds that the incidents cited by Plaintiff in her Complaint and attached documents are not severe nor pervasive enough to form the basis for a hostile work environment claim. The comments directed at Plaintiff about her hair and appearance do not rise to the level of being physically threatening or humiliating. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ( "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not" give rise to a hostile environment claim.). Nor do the criticisms regarding Plaintiff's attendance and performance amount to actionable harassment based on race. See Bass, 324 F.3d

at 765 (emphasizing plaintiff's allegations "merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors" and were insufficient to state hostile work environment claim). Because Plaintiff has not identified any mistreatment based on her race, let alone the severe or pervasive conduct necessary to demonstrate a hostile work environment, Plaintiff's harassment claim fails. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title VII workplace harassment claim be granted.

### D. Retaliation Claim under Title VII

To state a prima facie case of retaliation in violation of Title VII, Plaintiff must show: (1) that she engaged in protected activity; (2) that the employer took an adverse action against her; and (3) a causal connection between her protected activity and the adverse action. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). "Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir.1998) (internal citations omitted).

A mere complaint of harassment or discrimination in general, without any connection to a protected class, is insufficient. Bonds, 629 F.3d at 384 (emphasizing that Title VII does not "prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII"); Monk v. Potter, 723 F.Supp.2d 860, 880 (E.D. Va. 2010), aff'd, Monk v. Donahoe, 407 Fed. App'x. 675 (4th Cir. 2011) ("Title VII does not prohibit retaliation against employees who do not allege unlawful discrimination."). "Since, by

9

definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).

Plaintiff alleges that she complained "numerous times" to the Principal about the alleged offensive comments by her co-workers and that the Principal "would tell me they did not mean anything by it." Doc. 1 at 7. Plaintiff also claims that in October 2009, she "initiated several emails to city, county, and school officials asking for help and an investigation into my situation" and that she "never heard that an investigation was ever done and no one bothered to respond to my request for help." Id. Plaintiff alleges in her Complaint that she "believe[s] she was chosen for reduction because of my corrective action plan in retaliation for having complained." Id. at 8.

Plaintiff's retaliation claim fails because there is no suggestion that she put CMS on notice that *race* discrimination or harassment was ever an issue. As noted above, the alleged comments about Plaintiff's hair and weight neither explicitly nor implicitly referred to race or any other protected category. Plaintiff's disagreements with her supervisors and co-workers also fail to implicate race or any other protected category. Title VII requires that employees provide some kind of notice to their employer that they are complaining about prohibited practices covered by the statute. Generalized complaints about disputes or annoyances in the workplace are insufficient. See, e.g., Dowe, 145 F.3d at 657 (holding failure to establish a retaliation claim because decisionmaker was unaware of protected activity); Monk, 723 F.Supp.2d at 880 (holding complaints about supervisor's management style were not protected activity for purpose of retaliation claim since no allegation of unlawful discrimination). In the absence of any allegations that CMS was on notice that *race* discrimination or harassment was at issue, Plaintiff's retaliation claim fails.

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title VII retaliation claim be granted.

## III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant CMS's Motion to Dismiss, Doc. 8, be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel

for the parties; <u>and to the Honorable Max O. Cogburn, Jr.</u>

**SO RECOMMENDED AND ORDERED**.

Signed: August 5, 2011

David S. Cayer
United States Magistrate Judge